IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SHAYLA R. BOLDEN,                    )
                                     )
                 Plaintiff,          )
                                     )   CIVIL ACTION
v.                                   )
                                     )   No. 07-2081-KHV-JTR
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
                 Defendant.          )
_____)


REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614 of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). The case has been referred to this court for a Report and Recommendation.  (Doc. 4).  The court recommends that the Commissioner's decision be reversed and judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) remanding the case for further proceedings consistent with this opinion.

I.   Background

Plaintiff applied for both DIB and SSI in September, 2004 alleging disability beginning Oct. 1, 1997.  (R. 10, 33-35, 240-

42).  Plaintiff's applications were denied and, in accordance
with the notice of denial, plaintiff requested and was granted a
hearing before an Administrative Law Judge (ALJ).  (R. 10, 19-30,
249-315).  At the hearing plaintiff was represented by an
attorney, and testimony was taken from plaintiff, two third-party
witnesses for plaintiff, and a vocational expert.  (R. 10, 13,
249-50).  The record was held open after the hearing in order to
procure a consultative psychological evaluation, after which the
ALJ issued a decision on Jul. 27, 2006.  (R. 10-18, 310-14).  In
the decision, the ALJ found that although plaintiff is unable to
perform her past relevant work, she is able to perform other work
existing in substantial numbers in the economy, such as work as a
laundry worker or a garment pressing machine operator.  (R. 17).
He concluded, therefore, that plaintiff has not been disabled
within the meaning of the Act at any time on or after Oct. 1,
1997, and denied her applications.  (R. 18).  Apparently
plaintiff sought review of the decision, but the Appeals Council
denied review.  (R. 3-5).  Therefore, the ALJ's decision is the
final decision of the Commissioner.  (R. 3); Threet v. Barnhart,
353 F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now seeks
judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C.
§§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of

the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of

at least twelve months.  42 U.S.C. § 423(d).  The claimant's
impairments must be of such severity that she is not only unable
to perform her past relevant work, but cannot, considering her
age, education, and work experience, engage in any other
substantial gainful work existing in the national economy.  Id.

The Commissioner has established a five-step sequential
process to evaluate whether a claimant is disabled.  20 C.F.R.
§§ 404.1520, 416.920 (2006); Allen v. Barnhart, 357 F.3d 1140,
1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination
can be made at any of the steps that a claimant is or is not
disabled, evaluation under a subsequent step is not necessary."
Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines
whether claimant has engaged in substantial gainful activity
since the alleged onset, whether she has severe impairments, and
whether the severity of her impairments meets or equals the
severity of any impairment in the Listing of Impairments (20
C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If
plaintiff's impairments do no meet or equal the severity of a
listing, the Commissioner assesses claimant's residual functional
capacity (RFC).  20 C.F.R. §§ 404.1520, 416.920.  This assessment
is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates
steps four and five--whether the claimant can perform her past

-4-

relevant work, and whether she is able to perform other work in the national economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

**III. Arguments**

Plaintiff claims the ALJ erred in assessing plaintiff's RFC in that (1) he did not evaluate Dr. Sisk's medical opinion that plaintiff is unable to maintain an independent lifestyle and would function best in a group living situation; (2) he failed to "mention the weight, if any, that he assigned to the testimony" of the third-party witnesses who testified on plaintiff's behalf; and (3) he failed to fully develop the record because he failed to evaluate plaintiff pursuant to the WMS-III (Wechsler Memory Scale - 3rd Edition) as suggested by Dr. Bratt.  (Pl. Br. 16-19)(quotation from p. 18).  The Commissioner argues that the ALJ properly considered and discussed the medical opinions of Drs. Sisk and Bratt and adequately discussed and considered the opinions of the third-party witnesses; and that although the request to perform WMS-III testing was not made in time to permit authorization prior to Dr. Bratt's evaluation, Dr. Bratt

performed a thorough examination, plaintiff did not suggest
additional testing was needed, and the record--including two
psychological evaluations--was adequate to assess plaintiff's RFC
without WMS-III testing.  The court disagrees with the
Commissioner, and finds that remand is necessary to correct each
of the three errors alleged by plaintiff.  The court addresses
the errors in reverse order to that used in plaintiff's brief
because a proper determination on remand will require that the
errors be corrected and the evidence be considered in the order
suggested by the court.  A proper consideration of each error is
necessary for proper consideration of the next issue raised.

**IV.  The Decision**

As the Commissioner argues in his brief, the decision
includes summaries of the testimony of plaintiff's third party
witnesses and of the psychological evaluations performed by Drs.
Sisk and Bratt.  (R. 13-14).  The ALJ noted the testimony of
plaintiff's social worker, Janice Kerby, to the effect that
plaintiff "has problems with organization, scheduling, and
remembering," and that plaintiff "can do simple instructions but
nothing harder."  (R. 13).  The ALJ noted testimony by Linda
McNicholas with Big Brother/Big Sister[1] that plaintiff "has

---

[1]Ms. McNicholas testified, "Shayla and I have been a Big
Brother and Sister team for 15 years."  (R. 300).

trouble following instructions and has to be coached through most every task." Id.

The ALJ also acknowledged the opinions of Drs. Sisk and Bratt. He noted Dr. Sisk's report that plaintiff "had a depressed mood, blunted affect, effortful thinking, difficulty expressing herself and crying." (R. 13). He acknowledged the borderline to low average range of scores that plaintiff received on IQ testing by Dr. Sisk, recognized the psychologist's comment that plaintiff "showed many of the deficits associated with learning disorder with poor ability to maintain verbal concentration," and stated, "The doctor noted a combination of endogenous mental defects and an impoverished early environment contributed to borderline intellectual functioning." (R. 13-14). He recognized Dr. Sisk's mental diagnoses of recurrent depressive disorder, borderline intellectual functioning, learning disorder, and PCP dependence in remission, and that Dr. Sisk had assessed a Global Assessment of Functioning (GAF) score of 50[2]. He frankly

_____

[2]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 30 (4th ed. 1994). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 32. GAF is an objective classification system providing evidence of a degree of mental impairment. Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)). A GAF score in the range of 41-50 indicates "**Serious symptoms . . . OR any serious impairment in social, occupational, or school**

acknowledged Dr. Sisk's medical opinion "that while the claimant would benefit emotionally with anti-depressants, her learning disorders and borderline intellectual functioning would make it not likely to be able to achieve the social and occupational (goals) needed for self-support." (R. 14).

The ALJ acknowledged Dr. Bratt's discussion of plaintiff's school records indicating overall average intellectual ability with weakness in word[3] knowledge and verbal reasoning, normal adaptive behavior functioning, and learning disabilities with speech and language difficulty. (R. 14). He recognized Dr. Bratt's findings that plaintiff was attentive, focused, had minor difficulty recalling past incidents, claimed to be independent in self-care and activities of daily living, was alert, oriented, with no significant cognitive impairment, normal attention, concentration, judgment, insight, and short term memory, with limitations in reading, writing, and math. <u>Id.</u> He stated Dr. Bratt's diagnoses of post traumatic stress disorder, adjustment disorder with depressed mood, rule out dysthymic disorder, and PCP dependence in remission. <u>Id.</u> Finally, he noted Dr. Bratt's medical opinion that plaintiff "was able to understand

---

**functioning**." DSM-IV, at 32.

[3]The decision refers to this as a "weakness in work knowledge," (R. 14) but Dr. Bratt's report used the term "word knowledge" and the court recognizes that the decision contains a typographical error.

instructions and follow both simple and complex commands." <u>Id.</u>
As plaintiff argues, the ALJ did not mention Dr. Bratt's
suggestion to test plaintiff using the WMS-III.

After discussing the testimony and medical evaluations and
opinions as discussed above, the ALJ stated that he had evaluated
the severity of plaintiff's mental impairments in accordance with
the psychiatric review technique and found that plaintiff's

> impairments mildly restrict activities of daily living,
> mildly to moderately limit her in maintaining social
> functioning, and cause moderate deficiencies of
> concentration, persistence or pace.  There is
> insufficient evidence available to make a determination
> regarding the number of episodes of deterioration or
> decompensation of extended duration.  The claimant's
> mental impairments are insufficient to satisfy C
> criteria.

(R. 14).

The ALJ evaluated plaintiff's allegations of disabling
symptoms and found them not credible.  (R. 15-16).  He then
stated his RFC assessment:

> Based on the totality of the evidence, the undersigned
> finds the claimant can lift, carry, push, and pull 10
> pounds frequently and 20 pounds occasionally.  She can
> sit/stand 6 hours in an 8 hour workday and walk for 2
> hours in an 8 hour workday.  The claimant, who has a
> third grade math and reading ability, should not
> perform complex tasks or do work with rigid quotas.
> The claimant is limited to simple, repetitive tasks at
> low stress, with minimal interaction with the public
> and co-workers.

(R. 16).

**V.   Analysis**

An administrative agency must give reasons for its decisions.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). (citing Reyes v. Bowen, 845 F.2d 242, 244 (10th Cir. 1988)). But, this case illustrates a problem with many of the Commissioner's decisions which the court finds disturbing.  In general, the ALJ has set out most of the operative facts from the record.  The ALJ has also made findings which lead to the final decision reached in the case.  However, the facts presented do not lead directly and resolutely to the findings reached by the ALJ, and the ALJ has not described how the evidence supports each conclusion nor explained how any ambiguities and material inconsistencies in the evidence were considered and resolved. Therefore, the court cannot determine the basis for the ALJ's decision and cannot determine whether substantial evidence in the record as a whole supports the decision.

For example, in this case the testimony of the third-party witnesses and the report and opinions of Dr. Sisk do not agree with the report and opinions of Dr. Bratt, do not support the ALJ's findings regarding the severity of plaintiff's mental impairments, and do not support the ALJ's RFC assessment. Moreover, the ALJ did not discuss the effect any of the evidence had on his findings regarding the severity of plaintiff's mental impairments or regarding the mental RFC assessment made.  In making an RFC assessment the Commissioner has explained that an

ALJ must include a narrative discussion in the decision.  <u>Soc.</u>
<u>Sec. Ruling</u> (SSR) 96-8p, West's Soc. Sec. Reporting Serv.,
Rulings 143 (Supp. 2007).  The narrative discussion is to cite
specific medical facts to describe how the evidence supports each
conclusion, discuss how the plaintiff is able to perform
sustained work activities, and describe the maximum amount of
each work activity the plaintiff can perform.  <u>Id.</u>  The
discussion must include an explanation how any ambiguities and
material inconsistencies in the evidence were considered and
resolved.  <u>Id.</u>  If the ALJ's RFC assessment conflicts with any
medical source opinion, the ALJ must explain why he did not adopt
that opinion.  <u>Id.</u> at 150.

Here, the ALJ did not even mention Dr. Bratt's suggestion
that plaintiff should have a WMS-III test.  Therefore, the court
cannot tell why the test was not given.  Perhaps, as the
Commissioner suggests in his brief, the ALJ determined that the
record (including the psychological evaluations by Drs. Sisk and
Bratt) was adequate to properly assess plaintiff's mental RFC.
However, the ALJ did not state that he had made such a
determination and did not explain the basis for that
determination.  Therefore, the court is unable to determine
whether such a determination was made, and whether substantial
evidence in the record as a whole supports the determination.
The court may not rely upon appellate counsel's post-hoc

rationalizations for a decision.  <u>Knipe v. Heckler</u>, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  Nor may it create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1263 (10th Cir. 2005).  Remand is necessary for the Commissioner to determine whether WMS-III testing is appropriate and, if not, to explain why not, based upon the record evidence.

As discussed above, the ALJ acknowledged the testimony and summarized the opinions of Ms. Kerby and Ms. McNicholas, the witnesses for plaintiff.  However, as plaintiff argued, the ALJ did not state what weight he gave to that testimony.  The Commissioner argues this is of no import because the ALJ considered and specifically discussed the testimony of the witnesses, and the law of the Tenth Circuit requires no more. (Comm'r Br. 6)(citing <u>Adams v. Chater</u>, 93 F.3d 712, 715 (10th Cir. 1996)).  The Commissioner is correct that an ALJ need not make specific written findings regarding the credibility of witnesses other than the claimant, "particularly where the written decision reflects that the ALJ considered the testimony." <u>Adams</u>, 93 F.3d at 715.  Here, however, plaintiff does not claim the ALJ failed to consider the testimony of the witnesses or failed to state a credibility finding regarding that testimony. Rather, plaintiff argues that decision does not reveal <u>how</u> the

ALJ handled that testimony or the significance of that testimony in making the findings in the decision.  The court agrees.

Here, determination of the limitations resulting from plaintiff's mental impairments is central to a determination of whether plaintiff is disabled.  The record contains no treating source opinions regarding plaintiff's mental capacities.  Two psychologists, Drs. Sisk and Bratt, each examined plaintiff one time within six months of each other and rendered opinions regarding plaintiff's mental capacities and the limitations caused by her mental impairments.  (R. 219-39).  Yet, those opinions are directly contradictory to one another.

The testimonial evidence from the two third-party witnesses tends to support and agree with the medical opinion of one psychologist, Dr. Sisk, and tends to undermine and contradict the opinion of the other psychologist, Dr. Bratt.  Ms. Kerby is a social worker who had been providing case management services for plaintiff for nineteen months and had seen plaintiff approximately three times a week for nineteen months.  (R. 294-95).  As such, Ms. Kerby's opinion is the opinion of an "other medical source" and must be evaluated in accordance with SSR 06-3p.  Frantz v. Astrue, ___ F.3d ___, ___, 2007 WL 4328794, at * 2-3 (10th Cir. Dec. 12, 2007).  Ms. McNicholas had been working with plaintiff in the Big Brother/Big Sister program for fifteen years.  (R. 300).  The ALJ presented a summary of the testimony

-13-

of the witnesses which confirms that the testimony tends to support Dr. Sisk's medical opinion and tends to contradict Dr. Bratt's medical opinion.  Yet, the ALJ did not explain how he weighed the witnesses' testimony or how he considered that testimony in determining the weight to give the medical opinions.

Although one might assume that the ALJ determined the testimony was not worthy of acceptance, there is no indication in the decision that the ALJ discounted or rejected the testimony. Rather, the ALJ merely summarized the testimony and left the reader to guess how that testimony affected the decision.  Such a course invites a reviewing court or the Commissioner's appellate counsel to look into the evidence and provide a rationale which would support the determination made by the ALJ.  However, as discussed above, the court may not accept a post-hoc rationalization provided by the Commissioner's counsel and may not provide its own post-hoc rationalization for the Commissioner's decision.  Because the decision does not reveal how the witnesses' testimony was used (or discounted), remand is necessary for the Commissioner to explain how the testimony was used in reaching the decision at issue.

In a final allegation of error, plaintiff claims the ALJ failed to consider Dr. Sisk's opinion that plaintiff is unable to maintain an independent lifestyle and would function best in a group living situation.  The Commissioner argues, "Contrary to

Plaintiff's argument, the ALJ specifically discussed the opinion
of Dr. Sisk." (Comm'r Br. 4). While the court agrees that the
ALJ discussed the opinion of Dr. Sisk, it finds no mention in the
decision at issue of Dr. Sisk's opinion that plaintiff is unable
to maintain an independent lifestyle and would function best in a
group living situation.

Opinions from any medical source, even those regarding
issues reserved to the Commissioner, must not be ignored, and
must be evaluated by the Commissioner in accordance with factors
contained in the regulations. 20 C.F.R. §§ 404.1527(d),
416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings
123-24 (Supp. 2007). When the Commissioner does not give
controlling weight to a treating physician's opinion on the
nature and severity of the claimant's impairment(s), he will
apply certain factors in determining the weight given all medical
opinions. Id. §§ 404.1527(d)(2-6), 416.927(d)(2-6). Those
factors are: (1) the length of the treatment relationship and the
frequency of examination; (2) the nature and extent of the
treatment relationship, including the treatment provided and the
kind of examination or testing performed; (3) the degree to which
the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and (6) other factors brought to

the ALJ's attention which tend to support or contradict the
opinion.  Id.; see also Goatcher v. Dep't of Health and Human
Serv., 52 F.3d 288, 290 (10th Cir. 1995).

Here, the ALJ did not perform any specific weighing of the
medical opinions.  He generally summarized the reports and
opinions of Drs. Sisk and Bratt, but he did not mention Dr.
Sisk's opinion that plaintiff is unable to maintain an
independent lifestyle and would function best in a group living
situation.  He did not engage in any relative weighing of the
doctors' opinions and did not explain how the evidence of record
in general or how the opinions in particular led him to make his
findings or how they support those findings and the decision.
Again, the ALJ summarized the facts in a general fashion, he
stated his conclusions regarding findings, and he stated his
decision that plaintiff is not disabled, leaving the reader to
guess how ambiguities in the evidence were resolved or how the
evidence supports the findings and conclusion.  The ALJ must
relate the facts to the findings, he must explain his decision
such that a reviewing court may determine whether substantial
evidence in the record as a whole supports the decision.  That
was not done here.

On remand, the Commissioner must determine whether WMS-III
testing is appropriate and explain his determination.  He must
consider the testimony of plaintiff's third-party witnesses and

explain the weight given that testimony in weighing the medical opinions and in assessing plaintiff's RFC.  Then, he must weigh the medical opinions of Drs. Sisk and Bratt, including Dr. Sisk's opinion that plaintiff is unable to maintain an independent lifestyle and would function best in a group living situation. Finally, he must explain how any ambiguities and inconsistencies in the evidence were resolved in weighing the medical opinions and in assessing plaintiff's RFC.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 30th day of January 2008, at Wichita, Kansas.

s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**

-17-